J-S39018-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: S.W., A MINOR | : | IN THE SUPERIOR COURT |
| | : | OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.S., MOTHER | : | No. 815 EDA 2019 |

Appeal from the Order Entered February 14, 2019
In the Court of Common Pleas of Philadelphia County
Family Court at No: CP-51-DP-0001332-2017

| | | |
|---|---|---|
| IN RE: L.J.-S., A MINOR | : | IN THE SUPERIOR COURT |
| | : | OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.S., MOTHER | : | No. 816 EDA 2019 |

Appeal from the Order Entered February 14, 2019
In the Court of Common Pleas of Philadelphia County
Family Court at No: CP-51-DP-0001333-2017

BEFORE: GANTMAN, P.J.E., STABILE, J., and STEVENS*, P.J.E.

MEMORANDUM BY STABILE, J.:                                    **FILED OCTOBER 10, 2019**

S.S. ("Mother") appeals from the permanency review orders entered February 14, 2019, which suspended temporarily her visitation with her minor daughters, S.W., born in July 2010, and L.J.-S., born in July 2013 (collectively, "the Children"). After review, we quash the appeals.

The record reveals that the Philadelphia Department of Human Services ("DHS") filed dependency petitions with respect to the Children on May 16,

_____
* Former Justice specially assigned to the Superior Court.

2017. In its petitions, DHS averred that it became involved with this family in July 2015, due to concerns regarding the Children's siblings, who are not relevant to this appeal. Regarding the Children, DHS averred that Mother did not enroll S.W. in school during the 2015-2016 school year and that S.W. had forty-three unexcused absences during the 2016-2017 school year thus far. When S.W. did attend school, she appeared dirty and unkempt. Among other things, DHS averred that Mother had a history of marijuana use, that she failed to attend meetings with the Community Umbrella Agency ("CUA"), and that she failed to comply with services at the Achieving Reunification Center, resulting in her repeated discharge. The trial court adjudicated the Children dependent on June 21, 2017. In its orders, the court did not remove either of the Children from Mother's home.

Although the details are not entirely clear from the record, Mother was incarcerated less than two months after the adjudication of dependency. The trial court entered permanency review orders on September 14, 2017, in which it transferred custody of the Children to their maternal grandfather and provided Mother with supervised visitation, apparently contingent upon her release. The court entered orders formally committing the Children to DHS's custody for placement with the maternal grandfather on December 21, 2017.[1]

---

[1] The trial court entered permanency review orders on February 15, 2018, in which it reiterated the directives from the orders of December 21, 2017. The permanency review order regarding S.W. also indicated that the court would be changing the child's permanent placement goal to placement with a fit and

Subsequently, according to permanency review orders entered June 14, 2018, Mother was released from incarceration and began exercising visitation with the Children. It appears that the Children were no longer residing with their maternal grandfather, as the orders indicated that they were in foster care through different agencies. In addition, the record contains a copy of a psychological evaluation of S.W., dated June 26, 2018, stating that the child was residing with a foster mother. The trial court entered permanency review orders on July 19, 2018, limiting Mother to line-of-sight/line-of-hearing visits with the Children only.

The instant appeal arises from a permanency review hearing which took place on February 14, 2019. During the hearing, DHS presented the testimony of CUA case manager, Jazzmine Mowatt. In relevant part, Ms. Mowatt testified that Mother continued to receive line-of-sight/line-of-hearing visits at CUA. N.T., 2/14/19, at 10. Since the preceding court date, Mother had attended only seventeen out of twenty-six possible visits. *Id.* Ms. Mowatt expressed concern that Mother made inappropriate statements to the Children during visits, which appeared to cause severe negative reactions. *Id.* at 10-11. She stated, "[t]here are conversations that she has with the [C]hildren, where she does not hold them accountable for some of the behaviors that does [*sic*]

_____

willing relative. Oddly, however, the court stated in every permanency review order thereafter that S.W.'s permanent placement goal remained return to parent or guardian.

- 3 -

occur, which then triggers them to go back in the foster homes and either get into fights, issues, needing to be 302'd,[2] removed."[3] *Id.* Specifically, Ms. Mowatt explained that S.W. had been "302'd" four times and that L.J.-S. had engaged in "[f]ighting with peers, fighting with the staff, throwing desks, [and was] not able to express herself in a -- in an appropriate way[.]" *Id.* at 27, 43, 65. With regard to L.J.-S., Ms. Mowatt testified that the child witnessed particularly troubling behavior by Mother during a recent visit. She explained that L.J.-S. alleged during the visit that her foster parent had hit her, and that Mother "became pretty aggressive. . . . And the cops were called. And the -- Mom . . . refused to let the child leave." *Id.* at 67. In light of these concerns, as well as Mother's noncompliance with services, Ms. Mowatt recommended that the trial court suspend Mother's visits with the Children. *Id.* at 11, 27, 72-73.

Ultimately, the trial court announced that it would suspend Mother's visits, but only temporarily, stating that it would reach a final decision once it received a recommendation from a therapist. The court explained as follows:

> In this case, I need to determine whether or not there's a -
> - a cause and effect between the [m]other's visitation and [S.W.]
> given the extreme history of her behavior. I need to objectively

---

[2] Being "302'd" is a colloquial term referring to an involuntary mental health commitment pursuant to Section 302 of the Mental Health Procedures Act, 50 P.S. § 7302.

[3] The testimony indicates that S.W. also become upset because of an incident during which her father, D.W., told her that her sibling, who is not involved in this appeal, was not her sibling. N.T., 2/14/19, at 48, 56.

verify whether or not the mother's interaction with the child is the cause of any of her behavior issues. So, temporarily suspend.

\*\*\*

All right. Regarding the visitation, Mother is to remain suspended. . . . until I get a recommendation from [S.W.'s] therapist that visitation . . . would be in the best interest of the child.[4] This also includes no phone contact. It's a no-contact order.

And once I -- once the child is interviewed with her therapist, then the therapist is -- can give me a recommendation one way or the other. I believe to protect the child and protect the child's psychological interests, given the very dramatic history she has had in contact with the mental health system, that isolating the child and give her -- giving her a safe space and giving her an opportunity to speak with her therapist and then the therapist can make recommendations. . . .

\*\*\*

Again, I'm going to -- taking all the circumstances into consideration and considering the behavior of this mother with the other children, there is a likely connection between her behavior at these visitations and the subsequent behavior of the [C]hildren. So, in the best interest of [L.J.-S.], I'm going to suspend the visit[s].

And I will reinstate once we get information from a therapist regarding the viability of such and whether or not there is any connection between the mother's behavior and the -- the resulting behavior of the child. I can't take this one child's case in isolation. And I -- regarding the facts and the potential disruptive,

---

[4] Despite referring solely to the Children's best interests during its explanation, the trial court acknowledges in its opinion that the "grave threat" standard controls whether it may deny Mother visitation. Trial Court Opinion, 5/7/19, at 12; *see* ***In re C.J.***, 729 A.2d 89, 94 (Pa. Super. 1999) ("[B]ecause of the constitutionally protected liberty interest parents have to such visitation, parental visitation is usually not denied or limited unless visitation with the parent poses a grave threat to the child.").

- 5 -

maladapted behavior of the child subsequent to contact with the mother, I have to protect this child going forward.

And if it turns out that there is no connection, I will be very quick to reinstate the visits. But, for now, for the safety and mental best interest of the child, I'm going to suspend with the same requirement that a therapist be assigned and begin therapy and then make a recommendation at some point.

*Id.* at 46-47, 61-62, 73-74.

Following the hearing, the trial court entered permanency review orders suspending Mother's visits temporarily, "until a recommendation is received from the child's therapist."[5] Permanency Review Order (S.W.), 2/14/19, at 1; Permanency Review Order (L.J.-S.), 2/14/19, at 1. In addition, the orders scheduled a goal change hearing as to both Children for May 9, 2019. Mother timely filed notices of appeal on March 14, 2019, as well as concise statements of errors complained of on appeal.

Mother now raises the following claims for our review:

1. Whether the trial court abused its discretion when it terminated [M]other's visitation when there was no evidence that [M]other presented a grave threat to the [C]hildren?

2. Whether the trial court abused its discretion when it terminated [M]other's visits when there existed a practicable continuation of line[-]of[-]sight or therapeutic visits could have been afforded?

Mother's Brief at 3 (proposed answers omitted).

_____

[5] In its opinion, the trial court requests that we affirm its orders "temporarily suspending Mother's visitation with her Children until a therapist can incorporate Mother into the Children's trauma therapy[.]" Trial Court Opinion, 5/7/19, at 16. The court's description of its orders appears to be erroneous, as it contradicts the actual text of the orders, as well as the court's statement of its intent during the hearing on February 14, 2019.

Before reaching the merits of Mother's issues, we must consider whether we possess jurisdiction over the instant appeal. "'[S]ince we lack jurisdiction over an unappealable order it is incumbent on us to determine, *sua sponte* when necessary, whether the appeal is taken from an appealable order.'" ***Gunn v. Automobile Ins. Co. of Hartford, Connecticut***, 971 A.2d 505, 508 (Pa. Super. 2009) (quoting ***Kulp v. Hrivnak***, 765 A.2d 796, 798 (Pa. Super. 2000)).

It is clear that "[a]n appeal lies only from a final order, unless permitted by rule or statute." ***Stewart v. Foxworth***, 65 A.3d 468, 471 (Pa. Super. 2013). Generally, a final order is one that disposes of all claims and all parties. ***See*** Pa.R.A.P. 341(b). In this case, the February 14, 2019 orders fail to satisfy the requirements of Rule 341(b). The orders did not dispose of all claims and all parties, and contemplated further proceedings in the form of a goal change hearing scheduled for May 9, 2019. Therefore, they are not final orders.

In reaching this conclusion, we observe that this Court has described, at times, orders like this one as final and appealable. Specifically, this Court has stated that orders involving custody and visitation in dependency matters are final when entered. ***See***, ***e.g.***, ***In re C.B.***, 861 A.2d 287, 289 n.1 (Pa. Super. 2004), *appeal denied*, 871 A.2d 187 (Pa. 2005) (indicating that the order on appeal, suspending visitation, "is a final, appealable order"). In doing so, we have relied on language from our Supreme Court's decision in ***In re H.S.W.C.-B.***, 836 A.2d 908, 911 (Pa. 2003), wherein the Court held that

orders denying goal changes in dependency cases are final. ***See***, ***e.g.***, ***C.B.***, 861 A.2d at 289 n.1; ***In the Interest of N.M.***, 186 A.3d 998, 1006 (Pa. Super. 2018), *reargument denied* (June 7, 2018) (citing ***H.S.W.C.-B.*** in a dependency case for the proposition that "all orders dealing with visitation or custody . . . are final when entered").

However, in this Court's most recent opinion addressing the subject, we rejected entirely the notion that our Supreme Court intended in ***H.S.W.C.-B.*** to render all orders in dependency matters dealing with custody and visitation final when entered. ***See In the Interest of J.M.***, 2019 Pa. Super. LEXIS 914 (Pa. Super. filed Sept. 13, 2019). ***J.M.*** involved orders that prohibited the appellant mother from visiting with her children at her home unless both she and the children tested negative for illegal substances. ***Id.*** at \*3. Following a careful analysis of the language in ***H.S.W.C.-B.***, this Court concluded that our Supreme Court's statement in that case "regarding the finality of 'orders dealing with . . . visitation' was a mere observation and interpretation of existing law pursuant to the Child Custody Act, not a binding prospective holding regarding orders dealing with visitation pursuant to the Juvenile Act." ***Id.*** at \*13 (quoting ***H.S.W.C.-B.***, 836 A.2d at 911). This Court concluded that the orders at issue in ***J.M.*** were not final, observing, in relevant part, that the trial court intended to revisit the issue of visits at the mother's home at a later court date, and that "the practical consequences of the orders do not put Mother out of court in effect." ***Id.*** at \*14.

We find this Court's analysis in **J.M.** equally applicable to the instant matter. As was the case in **J.M.**, the trial court in this appeal expressed its intent to revisit the issue of Mother's visitation at a later hearing. Moreover, the practical consequences of the court's orders do not put Mother out of court. To the contrary, the court scheduled a forthcoming goal change hearing in its permanency review orders. We conclude once again that these orders are not final, and that nothing in **H.S.W.C.-B.** suggests otherwise.

We next consider whether the February 14, 2019 permanency review orders are appealable pursuant to the collateral order doctrine. **See** Pa.R.A.P. 313(a) (permitting an appeal as of right from the collateral order of a lower court). "A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b).

Concerning the first prong of the collateral order doctrine, this Court discussed in **J.M.** whether visitation is separable from and collateral to the main cause of action of a dependency proceeding. 2019 Pa. Super. LEXIS 914 at *16-26. Much of this Court's discussion focused on the question of what precisely is the main cause of action in a dependency proceeding. **Id.** While this Court analyzed the relevant issues at great length, we ultimately declined to reach a conclusion. We stated simply that the matter is "quite complicated"

and best left "for another day," since the orders on appeal in that case failed with respect to the second and third prong of the collateral order doctrine, and no analysis of the first prong was actually necessary. *Id.* at *27.

Similarly, we decline to consider in the instant matter whether the issue of Mother's visitation is separable from and collateral to the main cause of action of the Children's dependency. Even if we were to hold that this issue does satisfy the first prong of the collateral order doctrine, we would conclude that the February 14, 2019 orders are still not appealable. It is clear that this issue satisfies the second prong of the collateral order doctrine, as Mother has a constitutional right to visit with the Children. *C.J.*, 729 A.2d at 94.

However, the February 14, 2019 orders fail to satisfy the third prong of the collateral order doctrine, as Mother's claims will not be irreparably lost if we postpone review. *See In re Estate of McAleer*, 194 A.3d 587, 593 (Pa. 2018), *appeal granted*, 201 A.3d 724 (Pa. 2019) ("To satisfy the third factor, an issue must actually be lost if review is postponed."). As detailed above, the trial court suspended Mother's visitation with the Children temporarily, pending a recommendation from a therapist. If, after receiving the therapist's recommendation, the court decides to suspend Mother's visitation indefinitely, she will have the opportunity to appeal and raise her claims at that time. By requiring that Mother appeal after the court makes its ultimate decision as to whether to suspend visitation, this Court will ensure that we receive a more developed record, including the therapist's recommendation, which will aid us

in conducting appellate review. **_See J.M._**, 2019 Pa. Super. LEXIS 914 at \*28-29 (finding no irreparable loss where the trial court did not deny home visits indefinitely, stated that it would revisit the issue later, and continued the case, meaning that it "would have the opportunity to address the issue again after hearing all of the most-up-to-date evidence . . . ."). Moreover, this will allow us to avoid the possibility of expending time and resources considering the merits of Mother's appeal, only for the court to reinstate visits, rendering our efforts inconsequential. By postponing review, this Court is not preventing Mother from challenging the suspension of her visits. Rather, we are requiring that Mother must appeal the suspension, if necessary, at a more appropriate time.[6]

Based on the foregoing, the February 14, 2019 permanency review orders are not final orders pursuant to Rule 341, nor are they collateral orders pursuant to Rule 313.[7] Therefore, this Court lacks jurisdiction to review the temporary suspension of Mother's visits and we must quash her appeal.

Appeals quashed.

---

[6] We also observe that the trial court scheduled a goal change hearing for May 9, 2019. It is beyond cavil that orders granting or denying a goal change are final and appealable. **_H.S.W.C.-B._**, 836 A.2d at 911. Thus, if the court has failed to reach a decision as to Mother's visitation by the time it enters its goal change order, assuming that it has not done so already, Mother may appeal and challenge the suspension then as well.

[7] We note as well that the permanency review orders are not interlocutory orders appealable as of right, pursuant to Pa.R.A.P. 311, and that Mother did not attempt to bring these appeals before the Court as interlocutory appeals by permission pursuant to Pa.R.A.P. 1311 and 42 Pa.C.S.A. § 702.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/10/19